IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:22CR26-1 |
| | : | |
| ANDREW ALLRED RODRIGUEZ | : | |

MOTION TO SUPPRESS

Introduction

On May 17, 2021, Mr. Rodriguez' vehicle and person were unlawfully stopped, detained, and searched by law enforcement officers, in violation of Mr. Rodriguez's Fourth Amendment right. The evidence seized as a result of that violation should be suppressed.

Facts

On May 17, 2021, at approximately 4:30 p.m., Sgt. J. W. Soles ("Soles") of the Davidson County Sheriff's Office Traffic and Criminal Enforcement Unit began following a vehicle driven by Mr. Rodriguez.[1] Soles had been requested to do so by Det. C. Goforth ("Goforth") of the Davidson County Sheriff's Office of Vice Narcotics Division. Goforth advised that Mr. Rodriguez was driving a newer black Dodge Ram truck displaying North Carolina registration plate HEE-

---

1 The facts contained within the Motion are a summary based on information from investigative reports from the Davidson County Sheriff's Department and Sgt.Sole's vehicle mounted camera. Mr. Rodriguez reserves the right to supplement his argument with additional facts that may be elicited at a hearing on the Motion to Suppress.

4863, and advised that the truck was headed toward Interstate 85 South. Goforth further advised that the vehicle was involved in an ongoing drug investigation.

Goforth advised that the truck arrived and stayed a short period of time at 801 East Park Avenue, Lexington, North Carolina. The residence was the target of an ongoing drug investigation. Goforth said that Mr. Rodriguez was observed by video surveillance (a pole camera) carrying a duffle bag which was Mr. Rodriguez placed in the back seat of the truck.

At the time of this stop, Det. B. Chriscoe ("Chriscoe") of the Randolph County's Sheriff's Office had gotten a 30-day warrant to put a GPS tracking device on Mr. Rodriguez's black Dodge Ram truck.[2] It was only because of this device that the Davidson County Sheriff's officers knew that Mr. Rodriguez was at 801 E. Park Avenue, Lexington, North Carolina. That residence was being watched via a pole camera. Through the pole camera, the officers saw Mr. Rodriguez leave the residence with a black duffle bag.

Soles reported that he saw the truck being driven by Mr. Rodriguez

---

2 The Davidson County Sheriff's Office Vice/Narcotics Unit, Thomasville Police Department Vice/Narcotics Unit and US Department of Homeland Security were investigating the distribution of narcotics from 801 East Park Avenue, Lexington, North Carolina. On March 23, 2021, the Detective R.B. Chriscoe ("Chriscoe") obtained a 30-day GPS tracking order for black Dodge Ram truck displaying North Carolina registration plate HEE-4863 in the Randolph County Superior Court. The GPS tracking order was extended on April 21, 2021.

following too closely[3] to the vehicle in front of it. The video of the incident does not support this report. Rather it shows a speeding car cutting in front of Mr. Rodriguez' vehicle and after a few seconds picking up speed and driving off. Mr. Rodriguez maintained his speed and his lane during this brief incident. Soles then activated his emergency equipment and conducted a traffic stop of Mr. Rodriguez's vehicle on Interstate Highway 85, southbound.

The traffic stop occurred at 4:35 p.m. Soles asked Mr. Rodriguez to provide his driver's license and registration, after which he ordered Mr. Rodriguez out of the vehicle. Soles noticed a black duffle bag in the back seat of the vehicle. At 4:38 p.m., Soles returned to his patrol car with the license and registration and with Mr. Rodriguez standing at the passenger side of the patrol car. At 4:39, Soles determined that the registration was valid.

At 4:46, Soles requested a K9 unit. At 5:01, Soles completed the citation and hands Mr. Rodriguez his registration card. Also, at 5:01, the canine unit arrived and the K9 scan began. At 5:02, Soles printed the citation and handed Mr. Rodriguez his driver's license.

---

3 North Carolina Law prohibits a motorist from following another motorist too closely, pursuant to N.C. Gen. Stat. § 20-152(a) (2018). N.C. Gen. Stat. § 20-152(a) (2018), states as follows, "the driver of a motor vehicle shall not follow another vehicle more closely than is prudent, having due regard for the speed of such vehicles, and the traffic upon and the condition of the highway."

At 5:03, Soles met with the canine handler, who said that the dog did not alert. After the dog did not alert, Soles asked Mr. Rodriguez if he had anything illegal in the vehicle. Mr. Rodriguez shook his head no. Soles then asked if he could search the vehicle and Mr. Rodriguez again shook his head no.

Even though the first canine did not alert, Soles detained Rodriguez and requested a second K9 to respond. At 5:10, the second K9 was contacted and arrived at 5:19. At 5:20, the second K9 gave a positive alert. After the positive alert, the vehicle was searched. Items seized included 1,074 grams of methamphetamine, currency, and two other handguns.

In his police report, Soles claims that he noticed Mr. Rodriguez was breathing rapidly. He also claims Mr. Rodriguez was sarcastic and rude. He further claims Mr. Rodriguez was argumentative and evasive. The video of the incident does not support these observations.

## Law and Argument

The officer did not have reasonable and articulable suspicion to stop the vehicle Mr. Rodriguez was driving. Even if the stop were valid, Mr. Rodriguez' continued detention while a second K9 was delivered constituted an illegal detention, thereby requiring suppression of all evidence obtained as a result of such illegality from the trial of this action.

4

I. Burden of Proof

Where a police officer acts without a warrant, the Government bears the burden of proving that the search was valid. The Government must demonstrate that the search falls within an exception to the warrant requirement and that it is reasonable under the Fourth Amendment. United States v. Freire, 710 F.2d 1515, 1519 (11th Cir. 1983), cert. denied, 465 U.S. 1023 (1984).

II. Reasonable Suspicion to Stop

An ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth Amendment. United States v. Hassan El, 5 F.3d 726, 729 (4th Cir. 1993), citing Delaware v. Prouse, 440 U.S. 648 (1979). Such a stop must be justified by probable cause, or a reasonable suspicion based on specific and articulable facts of unlawful conduct. Id., citing Terry v. Ohio, 392 U.S. 1 (1968). A law enforcement officer who observes a traffic violation can stop and detain the offending vehicle to perform the traditional incident of a traffic stop. United States v. Branch, 537 F.3d 328, 335 (4th Cir. 2008).

Here, however, the video shows that Mr. Rodriguez was not following too closely. Thus, Sgt. Sole did not observe a traffic violation and did not have reasonable suspicion to stop Mr. Rodriguez.

The Government might argue that the information Goforth and Chriscoe

5

(relying on the collective knowledge doctrine) developed about the ongoing drug investigation involving the 801 East Park residence and Mr. Rodriguez' vehicle provided reasonable suspicion to stop Mr. Rodriguez. On May 17, 2021, that residence was being watched via a pole camera. Through the pole camera, the officers saw Mr. Rodriguez leave the residence with a black duffle bag. But no transactions were observed nor were there any controlled buys. Further, information developed prior to May 17, 2021, as part of this ongoing drug investigation, does not provide reasonable suspicion to stop Mr. Rodriguez.

III. <u>Soles' Continued Detention of Mr. Rodriguez after Completing the Reason for the Stop was Unlawful</u>

Sgt. Soles' continued seizure of Mr. Rodriguez to conduct a drug investigation without reasonable suspicion violated Mr. Rodriguez's Fourth Amendment rights. In <u>Rodriguez v. United States</u>, 135 S. Ct 1609 (2015), the Supreme Court held that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, . . . and attend to related safety concerns[.]" <u>Rodriguez v. United States</u>, 135 S. Ct. 1609, 1614 (2015) (quoting <u>Illinois v. Caballes</u>, 543 U.S. 405, 407 (2005) and citing <u>United States v. Sharpe</u>, 470 U.S. 675, 685 (1985). "Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.'" <u>Rodriguez</u>,

6

135 S. Ct. at 1614 (citing Caballes, 543 U.S. at 407). The Supreme Court instructed that "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." Rodriguez, 135 S. Ct. at 1614 (citing Sharpe, 470 U.S. at 686 (in determining the reasonable duration of a stop, "it [is] appropriate to examine whether the police diligently pursued [the] investigation")). Notably, the Fourth Circuit points out that Rodriguez does not allow even for a *de minimis* delay. United States v. Bowman, 884 F.3d 200, 201 (4th Cir. 2018) (citing Mr. Rodriguez, 135 S. Ct. at 1615-16.)

In Caballes, the Supreme Court cautioned that a traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a warning ticket. 543 U.S., at 407. Accordingly in Rodriguez, the Supreme Court held that a police officer "may conduct certain unrelated checks during an otherwise lawful traffic stop," but "he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." 135 S. Ct. at 1615.

In Rodriguez, a police officer initiated a traffic stop after observing the defendant's vehicle violate a traffic law by veering onto the shoulder. Rodriguez, 135 S. Ct. at 1612. The officer gathered the defendant's license, registration, and proof of insurance. Id. at 1613. After running records check on the

defendant, the officer asked the passenger for his driver's license and began to question him about where the two men were coming from and where they were going. The passenger answered the questions. The defendant and the passenger were then given back all of their documents, and the defendant received a copy of the written warning. Although justification for the traffic stop was completed, the officer asked for permission to walk his dog around the defendant's vehicle. See Id. The defendant said no, and the officer then instructed the defendant to turn off the ignition, exit the vehicle, and stand in front of the patrol car to wait for the second officer. Id. The defendant complied, and about five minutes later a deputy sheriff arrived. The officer then walked the dog around the vehicle and the dog alerted to the presence of drugs. A search of the vehicle revealed a large bag of methamphetamine. Id.

The Supreme Court held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." Id. at 1612. The Court stated that a "seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." Id. (quoting Caballes, 543 U.S. at 407).

The Court rejected the argument that a de minimus detainment does not

infringe on the Fourth Amendment. A dog sniff is not an ordinary incident of a traffic stop and lacks the same close connection to roadway safety as the ordinary inquiries (such as checking for a driver's license and outstanding warrants), and is not fairly characterized as part of the officer's traffic mission. See Rodriguez, 135 S. Ct. at 1615.

Soles did not have reasonable suspicion to continue to seize Mr. Rodriguez in order to conduct a drug investigation. The Fourth Circuit has held that the Government "must do more than simply label a behavior as 'suspicious' to make it so." See United States v. Foster, 634 F.3d 243, 248 (4th Cir. 2011). Accordingly, the Government must also "be able to either articulate why a particular behavior is suspicious or logically demonstrate, given the surrounding circumstances, that the behavior is likely to be indicative of some more sinister activity than may appear at first glance." Id. The "Government cannot rely upon post hoc rationalizations to validate those seizures that happen to turn up contraband." See id. at 249.

Soles' reported observations of the nervousness of Rodriguez did not provide reasonable suspicion for the continued seizure. See United States v. McKoy, 428 F.3d 38, 40 (1st Cir. 2005) ("Nervousness is a common and entirely natural reaction to police presence...."); United States v. Richardson, 385 F.3d

625, 630-31 (6th Cir. 2004) ("[A]lthough nervousness has been considered in finding reasonable suspicion in conjunction with other factors, it is an unreliable indicator, especially in the context of a traffic stop. Many citizens become nervous during a traffic stop, even when they have nothing to hide or fear.") (citations omitted); United States v. Portillo–Aguirre, 311 F.3d 647, 656 n.49 (5th Cir. 2002) ("We have never held that nervousness alone is sufficient to create reasonable suspicion of criminal activity."); United States v. Jones, 269 F.3d 919, 929 (8th Cir. 2001) (suspect's nervous demeanor alone was not enough to establish reasonable suspicion); United States v. Johnson, 482 Fed. Appx. 137, 145 (6th Cir. 2012) (unpublished) ("Especially where, as here, the 'nervous indicators' an officer cites are such relatively commonplace behaviors as eye contact, apprehensiveness while handing over a license, sweating, forgetting to provide paperwork, standing, and looking back and forth between two officers, a court risks impaling the defendant on Morton's Fork. Had Johnson averted his eyes and slouched, he might have been considered evasive. Because he stood straight and maintained eye contact, Officer Duggan considered him aggressive. Johnson simply could not win. Nervous indicators are weak indicators in the traffic stop context.").

In this case, once the citation had been printed and his license and

registration had been returned, there was no reason to detain Mr. Rodriguez any longer. He should have been allowed to leave. Detaining Mr. Rodriguez while a second K9 could be obtained to provide the positive alert the officer sought infringed on his Fourth Amendment rights. The totality of the circumstances indicates that Soles did not have reasonable suspicion to extend the traffic stop allowing him to conduct a drug investigation. See United States v. Digiovanni, 650 F.3d 498, 507 (4th Cir. 2011) ("If a police officer seeks to prolong a traffic stop to allow for investigation into a matter outside the scope of the initial stop, he must possess reasonable suspicion or receive the driver's consent."). As in Digiovanni, "reasonable suspicion was not present to turn this routine traffic stop into a drug investigation." See id. at 513. Mr. Rodriguez's continued seizure absent reasonable suspicion and without consent violated the Fourth Amendment.

In this case, Sgt. Sole stopped Mr. Rodriguez for allegedly following too close. He unreasonably prolonged the seizure, which was for an ordinary traffic offense, without reasonable suspicion when he required Mr. Rodriguez to remain at the scene of the traffic offense for a second K9 dog to arrive to sniff for drugs, contrary to Rodriguez.

IV. The Warrant for the GPS Tracking Devise Was Issued Without Probable Cause

11

The Government might argue that United States v. Jordan, 952 F.3d 160 (4th Cir. 2020), applies here and would justify further detaining Mr. Rodriguez. However, in Jordan, the officers obtained information based on a validly placed GPS devise. Here, any reason the officers might have had that the black duffle bag contained drugs was based on illicitly obtained information of Mr. Rodriguez's movements. Thus, the evidence is the fruit of the poisonous tree and should be suppressed. See Wong Sun v. United States, 371 U.S. 471 (1963).

At the time of this stop, Det. B. Chriscoe had gotten a warrant to put a GPS devise on Mr. Rodriguez's 2020 Dodge Ram truck. It was only because of this device that the Davidson County Sheriff's officers knew that Mr. Rodriguez was at 801 E. Park Avenue, Lexington, North Carolina. That residence was being watched via a pole camera. Through the pole camera, the officers saw Mr. Rodriguez leave the residence with a black duffle bag.

Placing a GPS device on a vehicle and monitoring that vehicle is considered a search under the Fourth Amendment and must be authorized by the issuance of a warrant. United States v. Jones, 132 S. Ct. 945, 949 (2011). A warrant must be based on probable cause.

The affidavit for the warrant for the GPS devise was lacking probable cause. Although the affidavit cites information from three confidential

12

informants, none of the informants dealt with Mr. Rodriguez or make any controlled buys from him. Most of the information in the affidavit pertained to other individual's activities, not Mr. Rodriguez. For example, a controlled buy took place between confidential informant CRS-1 and Brandon Monroe. The only connection to Mr. Rodriguez was that a white Honda belonging to Mr. Rodriguez was driven to the sale by Christopher Hogan. There was no evidence that Mr. Rodriguez was there or that he knew that his car was being used for this purpose. In fact, most of the information regarding Mr. Rodriguez was speculation of what he might be doing as he was followed and watched. On the last page of the affidavit, the Affiant stated that they had a picture of Mr. Rodriguez's black Dodge Ram 1500 leaving the residence of Christopher Hogan and presumed that Mr. Rodriguez was delivering methamphetamine to Christopher Hogan. But no transactions were observed nor were there any controlled buys.

Another individual, Brandon Monroe, was arrested on various drug related charges, stated that he purchased methamphetamine from Christopher Hogan. He stated that he believed that Hogan purchased his methamphetamine from Mr. Rodriguez, however, he gave no basis for that bald statement. "Two factors are key to [the probable cause] analysis: the informant's 'veracity' or 'reliability'

13

and his or her 'basis of knowledge.'" United States v. Wilhelm, 80 F.3d 116, 119 (4th Cir. 1996) (quoting Gates, 462 U.S. at 233). There was no information about Monroe's basis of knowledge, such as whether he saw transactions take place or if Hogan told him that Mr. Rodriguez was his supplier. The law is well settled that "'[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his actions cannot be a mere ratification of the bare conclusions of others.'" Wilhelm, 80 F.3d at 119 (quoting Gates, 462 U.S. at 239). The magistrate had no information about Monroe's "'basis of knowledge.'" Wilhelm, 80 F.3d at 119 (quoting Gates, 462 U.S. at 238). Because this key information was omitted from the affidavit, the magistrate did not have sufficient evidence from which to find probable cause. The rest of the affidavit also failed to provide probable cause.

Finally, the affidavit stated that on December 26, 2020, Mr. Rodriguez was arrested along with a couple of other individuals, for trafficking methamphetamine in South Carolina. Mr. Rodriguez has only been charged and has not been convicted on the charge. Although some weight can be given to prior convictions of similar conduct, even prior convictions alone cannot provide probable cause. United States v. Melvin, 419 F.2d 136 (4th Cir. 1969). Here, there is only evidence of a prior arrest. There simply was not enough

14

evidence to provide probable cause to place the GPS device on Mr. Rodriguez's truck.

## Conclusion

Accordingly, on May 17, 2021, Sgt. Soles' stop, and detention of Mr. Rodriguez violated the Fourth Amendment; and the evidence seized as a result of that violation should be suppressed. All evidence seized and statements made subsequent to the illegal seizure and search must be suppressed as fruit of the poisonous tree. As the Supreme Court has held, evidence seized in violation of a defendant's Fourth Amendment rights is inherently tainted "fruit of the poisonous tree," and therefore subject to being suppressed. <u>Wong Sun v United States</u>, 371 U.S. 471, 488 (1963).

Respectfully submitted this the 18th day of July, 2022.

                        LOUIS C. ALLEN III
                        Federal Public Defender

                        <u>/s/ Mireille P. Clough</u>
                        MIREILLE P. CLOUGH
                        Assistant Federal Public Defender
                        North Carolina State Bar No. 28473
                        301 N. Elm Street, Suite 410
                        Greensboro, NC 27401
                        Phone: (336) 333-5455
                        E-mail: Mireille_P_Clough@fd.org

CERTIFICATE OF SERVICE

    I hereby certify that on July 18, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Ms. Nicole R. Dupre
    Assistant United States Attorney

Respectfully submitted,

    /s/Mireille P. Clough
    MIREILLE P. CLOUGH
    Assistant Federal Public Defender
    North Carolina State Bar No. 28473
    251 N. Main Street, Suite 849
    Winston-Salem, NC 27101
    Telephone: (336) 631-5278
    E-mail: Mireille_P_Clough@fd.org